## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

## MOTION INFORMATION STATEMENT

Docket Number(s): 23-7246 _____     _____ Caption [use short title]

Motion for: Petitioner's Motion for Default Judgment

_____

Set forth below precise, complete statement of relief sought:

Ascent Pharmaceuticals, Inc. requests that the Court

grant default judgment or, in the alternative, order

remand with instructions and grant an extension of

time for Ascent's opening brief under Rule 27.1(f).

Ascent Pharmaceuticals, Inc.

v.

United States Drug Enforcement

Administration

MOVING PARTY: Ascent Pharmaceuticals, Inc.          OPPOSING PARTY: United States Drug Enforcement Administration

☐ Plaintiff          ☐ Defendant

☒ Appellant/Petitioner          ☐ Appellee/Respondent

MOVING ATTORNEY: Jim Walden          OPPOSING ATTORNEY: Urja Mittal

[name of attorney, with firm, address, phone number and e-mail]

Walden Macht & Haran LLP          U.S. Department of Justice

250 Vesey Street, 27th Floor, New York, NY 10281          950 Pennsylvania Avenue NW, Washington, DC 20530

(212) 335-2031; jwalden@wmhlaw.com          (202) 353-4895; urja.mittal@usdoj.gov

Court- Judge/ Agency appealed from: United States Drug Enforcement Administration

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☒ Yes  ☐ No (explain): _____

Opposing counsel's position on motion:
☐ Unopposed ☐ Opposed ☒ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☒ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below? ☐ Yes ☐ No
Has this relief been previously sought in this court? ☐ Yes ☐ No

Requested return date and explanation of emergency: _____

Is the oral argument on motion requested?  ☐ Yes ☒ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  ☐ Yes ☒ No  If yes, enter date: _____

**Signature of Moving Attorney:**

Jim Walden  Digitally signed by Jim Walden Date: 2023.12.17 22:45:55 -05'00'  Date: 12/17/2023      Service : ☒ Electronic  ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

ASCENT PHARMACEUTICALS, INC.,

                *Petitioner,*

          v.

UNITED STATES DRUG ENFORCEMENT
ADMINISTRATION,

                *Respondent.*

No. 23-7246

**PETITIONER'S MOTION FOR DEFAULT JUDGMENT**

JIM WALDEN
*WALDEN MACHT & HARAN LLP*
Attorneys for Appellant
250 Vesey Street, 27th Floor
New York, NY 10281
(212) 335-2030

Dated: December 17, 2023

## **TABLE OF CONTENTS**

**Pages**

PRELIMINARY STATEMENT ............................................................1

BACKGROUND ...........................................................................2

I.     The Operative Regulations .................................................2

II.    The Underlying Events ......................................................3

III.   Procedural History ...........................................................4

IV.    The Agency Record ..........................................................5

V.     Standard Of Review .........................................................5

ARGUMENT ...............................................................................6

I.     The Court Should Grant Default Judgment...........................6

II.    If the Court Remands to DEA, It Should Give Instructions and Reset the Briefing Schedule ......................................................10

III.   The Court Should Not Ignore the Error...............................13

CONCLUSION ............................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                                               <u>**Pages**</u>

*Abdulai v. Attorney General*,
    2022 WL 3226617 (3d Cir. 2022) ................................................................13

*Atieh v. Riordan et al.*,
    727 F.3d 73 (1st Cir. 2013).................................................................. 10, 14

*Barber v. Am. Sec. Bank*,
    841 F.2d 1159 (D.C. Cir. 1988) ......................................................................9

*Burlington Truck Lines, Inc. v. United States*,
    371 U.S. 156 (1962)........................................................................................15

*Cf. Teamsters, Chauffeurs, Warehousemen & Helpers Loc. Union 524 v.
    Billington*,
    402 F.2d 510 (9th Cir. 1968) ...........................................................................8

*Cmty. Coal. for Media Change v. F.C.C.*,
    646 F.2d 613 (D.C. Cir. 1980)......................................................................8, 9

*Dep't of Com. v. New York*,
    139 S. Ct. 2551 (2019)...................................................................................14

*Gilroy v. Erie Lackawanna Railroad Company*,
    421 F.2d 1321 (2d Cir. 1970) ...........................................................................8

*Marziliano v. Heckler*,
    728 F.2d 151 (2d Cir. 1984) .............................................................................7

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)............................................................................................6

*N.L.R.B. v. Columbia University*,
    541 F.2d 992 (2d Cir. 1976) ...........................................................................16

*N.L.R.B. v. Int'l Bhd. Of Elec. Workers, Loc. Union 16, AFL-CIO*,
    425 F.3d 1035 (7th Cir. 2005) .......................................................................13

*Nat. Res. Def. Council v. U.S. E.P.A.*,
    658 F.3d 200 (2d Cir. 2011) .............................................................................6

*Pitman v. U.S. Citizenship and Immigration Services*,
  2017 WL 5991738 (D. Utah 2017)...................................................9

*Recinos De Leon v. Gonzales*,
  400 F.3d 1185 (9th Cir. 2005) .....................................................16

*Reid v. City of New York*,
  212 F. App'x 10 (2d Cir. 2006)......................................................8

*Sec. & Exch. Comm'n v. Chenery Corp.*,
  332 U.S. 194 (1947)............................................................... 15, 16

*Stotler & Co. v. Able*,
  837 F.2d 1425 (7th Cir. 1988) .......................................................8

*Tourus Records, Inc. v. DEA*,
  259 F.3d 731 (D.C. Cir. 2001)............................................ 14, 16, 17

*United States v. Chicago*, M., *St. P. & P.R. Co.*,
  294 U.S. 499 (1935)................................................................16

*United States v. Mendez*,
  48 F.3d 1401 (5th Circuit 1995) ....................................................10

*Visels Drug Store, Inc. v. Drug Enf't Agency*,
  593 F. App'x 12 (2d Cir. 2014)................................................5, 14

## <u>Statutes</u>

16 U.S.C. § 1531 ......................................................................11

21 U.S.C. § 823 .........................................................................4

21 U.S.C. § 824 .........................................................................4

21 U.S.C. § 826 .........................................................................3

21 U.S.C. § 877 ................................................................. passim

5 U.S.C. § 706 ......................................................................1, 13

**<u>Rules</u>**

21 C.F.R § 1301.43 ...................................................................11

21 C.F.R § 1303 ............................................................... 2, 3, 11

2d Cir. R. 27.1 ................................................................. 1, 2, 17

Fed. R. App. P. 17(a) ....................................................... 1, 5, 17

Fed. R. App. P. 31 ........................................................... 8, 9, 10

Fed. R. Civ. P. 55 ..................................................................7, 8

**<u>Constitutional Provisions</u>**

U.S. Const. art. II, § 2 ..........................................................3

U.S. Const. art. II, § 3 ..........................................................3

## **PRELIMINARY STATEMENT**

Petitioner Ascent Pharmaceuticals, Inc. ("Ascent") respectfully requests a default judgment.  If the Court decides to remand to Drug Enforcement Administration ("DEA") instead, Ascent requests instructions and an extension of time to file its opening brief under Rule 27.1(f).  DEA has defaulted on its obligation under Rule 17(a) of the Federal Rules of Appellate Procedure to file the record in this matter, despite the Court having already issued a Notice of Default.  (*See* Dkt. 28.)  Ascent cannot meaningfully challenge, and the Court cannot meaningfully evaluate, DEA's decision to deny Ascent's procurement-quota applications without the record on which DEA based its decision.  DEA has effectively deprived Ascent of its ability to obtain judicial review, especially when the Court itself expedited this appeal.  DEA's conduct has only served to frustrate Ascent's last remaining avenue for relief and pushed Ascent closer to bankruptcy, after an entire year with no meaningful revenue and significant layoffs.

Pursuant to Local Rule 27.1, the undersigned notified counsel for DEA of this motion.  Counsel did not indicate whether it opposed the relief requested or whether it intends to file a response.  *See* Walden Decl., ¶ 3.

1

## BACKGROUND

This matter arises from DEA's denial of Ascent's 2023 procurement-quota applications (the "Quota Applications").[1]

## I.      The Operative Regulations

The DEA Administrator is required to issue procurement quotas to any "authoriz[ed]" person, which includes Ascent.  21 C.F.R. §§ 1303.12(a) and (c).[2] The Administrator may request supplemental information regarding any procurement-quota application.  *See* 21 C.F.R. § 1303.12(b).  Although operative regulations contemplate that the Administrator may deny a procurement-quota application, 21 C.F.R. § 1303.34(a), they do not explain the permissible grounds for any denial.  *See* 21 C.F.R. § 1303.12.[3]  Either way, the Administrator is required to

---

[1] "Procurement quotas authorize registrants like Ascent to procure materials for the purpose of manufacturing controlled substances into dosage forms.  *See* 21 C.F.R. §1303.2.

[2] On November 29, 2023, a new DEA rule went into effect concerning, among other things, quotas for controlled substances held by DEA-registered manufacturers.  *See* 88 Fed. Reg. 60140 (Aug. 31, 2023).  This Motion cites to the DEA regulation as it existed on October 4, 2023, the date of the filing of this proceeding.

[3] Elsewhere, the regulations grant the Administrator the power to determine other kinds of "quota" applications by considering the following factors: "the manufacturer's current rate of disposal, the trend of the national disposal rate during the preceding calendar year, the manufacturer's production cycle and inventory position, the economic availability of raw materials, yield and stability problems, emergencies such as strikes and fires, and other factors."  *See* 21 U.S.C. 826(c).

2

act by July 1 of the year preceding the quota request (here, July 1, 2022, for the 2023 quota). 21 C.F.R. § 1303.12(c).

## II.    The Underlying Events

In mid-2022, Ascent submitted the Quota Applications for the 2023 calendar year.[4]  In support of that application, Ascent provided DEA with its year-end inventory data for 2021 and 2022, and expected year-end inventory data for 2023. Ascent got no decision on its Quota Application by the statutory deadline.  DEA requested no additional information under 21 C.F.R § 1303(b).  Instead, DEA began a prolonged regulatory inspection of Ascent.

As of September 27, 2023, Ascent still had no answer on its Quota Applications.  Nor had DEA taken any other agency action.  Ascent continued making and shipping drugs.  If DEA believed Ascent was a risk to the public, it could have sought an immediate suspension order ("ISO"), pursuant to 21 U.S.C. § 824(d), but it did nothing.

In the interim, Ascent's supply of raw materials dwindled.  Its manufacture of controlled substances nearly ground to a halt, and it lost around 100 workers.  (Dkt. 8 at 106-108, ¶ 13.)  Facing financial ruin, the loss of its $200 million investment in

---

[4] The applications sought quotas for Dexmethylphenidate (for sale),  Hydrocodone (for sale), Hydromorphone, Lisdexamfetamine, Methadone, Methylphenidate (for sale), Oxycodone (for sale), Oxymorphone (for sale) , D,L Amphetamine, and D-Amphetamine (for sale), and Delta-9 tetrahydocannabinol.  (Dkt. 8 at 39-83.)

3

Ascent, and having no other options, *id*. at ¶ 14, on September 27, 2023 Ascent filed an action in the U.S. District Court for the Eastern District of New York, seeking to compel the agency to decide the Quota Applications.  *See Ascent Pharm., Inc. v. U.S. Drug Enf't Admin.*, No. 2:23-cv-07211 (E.D.N.Y. Sep. 27, 2023).

The next day, on September 28, 2023, DEA served Ascent with an order to show cause ("OTSC"), alleging recordkeeping violations under 21 U.S.C. § 823(a)(5) and 824(a)(4).[5]  (Dkt. 8 at 86-102.)   DEA sought no ISO.  *See id*.

The following day, DEA denied Ascent's procurement quota for 2023 (the "Decision").  (Ex. 1.)  The Decision made no reference to the OTSC.  (*See id.*)  The OTSC itself cites no recordkeeping violations with respect to the data provided in the Quota Applications.  (Dkt. 8 at 86–102.)   The only explanation for the Decision was the following:  DEA "lacks confidence in the data provided by Ascent in its quota requests."  (*See* Ex. 1.)

## III.   Procedural History

On October 3, 2023, Ascent filed a petition for review of the Decision under 21 U.S.C. § 877.  (Dkt. 1.)  On October 4, Ascent filed an Emergency Motion for Mandatory Preliminary Injunctive Relief ("Emergency Motion"), seeking an order compelling DEA to grant the Quota Applications.  (Dkt. 8.)

---

[5] The OTSC was filled with errors and contained misleading information.  (*See* Dkt. 8 at 31-38, ¶¶ 36-44; 159-164, ¶¶ 31 – 32.)

On November 14, 2023, the Court heard oral argument on the Emergency Motion and, later that day, denied the motion. (Dkt. 28.) In its Order denying the motion, the Court expedited this appeal in recognition of the urgent situation for Ascent. (Dkt. 27.) The deadline for Ascent to file its brief is currently December 19, 2023.

## IV.     The Agency Record

Pursuant to Rule 17(a) of the Federal Rules of Appellate Procedure, DEA was required to file the administrative record within 40 days after being served with the petition for review. The petition was served on DEA on October 3, 2023. (Dkt. 5.) Therefore, DEA's deadline to file the record was November 13, 2023. That date came and went.

On December 4, 2023 the Court issued a Notice of Agency Default, in which it stated: "[T]he certified agency record was due November 13, 2023. A written explanation of the default must be submitted to the Court by December 14, 2023, unless the certified record on appeal or stipulation that no record will be filed is submitted by that date." (Dkt. 28.) DEA did not respond to the notice of default.

## V.     Standard Of Review

Because § 877 does not have its own standard of review, the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, standard applies. *See Visels Drug Store, Inc. v. Drug Enf't Agency*, 593 F. App'x 12, 13–14 (2d Cir. 2014). Thus, the Court

5

should set aside an agency's decision if the administrative record reveals that "the agency relied on improper factors, failed to consider pertinent aspects of the problem, offered a rationale contradicting the evidence before it, or reached a conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise." *Nat. Res. Def. Council v. U.S. E.P.A.*, 658 F.3d 200, 215 (2d Cir. 2011) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)).

## ARGUMENT

DEA failed to file the agency record, even after this Court issued a default notice.  DEA provided no explanation for this failure.  The Federal Rules of Appellate Procedure do not give direct guidance on this situation.  Based on authorities described below, the Court has three options:  grant a default judgment, remand to the agency, or ignore the error.  We address each in turn.

## I.    The Court Should Grant Default Judgment

Circuit courts have upheld default judgments against a government agency under Rule 55(d) of the Federal Rules of Civil Procedure where the agency failed to comply with statutory deadlines or court directives.  Rule 55(d) provides that "default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court."

6

*Marziliano v. Heckler*, 728 F.2d 151, 157 (2d Cir. 1984) is instructive. There, the Second Circuit upheld the district court's decision to grant default judgment on plaintiff's motion for attorney's fees against the U.S. Secretary of Health and Human Services pursuant to a prior version of Rule 55(d) (then-Rule 55(e))[6] following the agency's failure to respond. *Id.* at 158. The Court found there was an "adequate basis in the record" before the district court to support the default judgment. *Id.* The Second Circuit interpreted the rule broadly to encompass agency failures to respond even to "less cosmic defaults such as a failure to comply with a discovery order, or failure to obey a court order to hold an administrative hearing." *Id.* at 157. The Court explained: "We do not interpret Rule 55(e) to require an evidentiary hearing if one would ordinarily not have been held, nor to require the court to demand more or different evidence than it would ordinarily receive in order to make its decision." *Id.*

Here, the transgression is closer to cosmic: DEA violated a deadline twice and ignored this Court's default notice. And, the consequence applied in *Marziliano*—default—draws support from Rule of Appellate Procedure 31. Under that Rule, a court may dismiss an appeal for failing to file a timely brief. *See* Fed. R. App. P. 31 (c) ("[i]f an appellant fails to file a brief within the time provided by

---

[6] The prior version of the rule, Rule 55(e), provided: "No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."

this rule, or within an extended time, an appellee may move to dismiss the appeal. An appellee who fails to file a brief will not be heard at oral argument unless the court grants permission.").[7]

The Second Circuit has taken an appropriately hardline on Rule 31 violations. "Unless (an) application for extended time is made so that it may be considered before the allotted time has expired, it is evidence of a lack of good faith and, failing extraordinary circumstances, it constitutes neglect which will not be excused." *Gilroy v. Erie Lackawanna R.R. Co.*, 421 F.2d 1321, 1323 (2d Cir. 1970). Other circuits have adopted the same standard and take violations of briefing schedule orders seriously. *See, e.g., Cmty. Coal. for Media Change v. F.C.C.,* 646 F.2d 613, 616 (D.C. Cir. 1980) (flaunting of time limits specified in Federal Rules of Appellate Procedure for case processing, such as time limits for filing briefs, will not be tolerated); *Stotler & Co. v. Able*, 837 F.2d 1425, 1427 (7th Cir. 1988) (dismissing appeal, pursuant to Fed. R. App. P. 31(c), for failure to comply with

---

[7] We are not advancing Rule 31 as *direct* authority for a default judgment. Indeed, this Circuit has said default is not a remedy for failing to file a brief. *See Reid v. City of New York*, 212 F. App'x 10, 11 (2d Cir. 2006). Rather, we offer Rule 31 only by *analogy* where the agency has refused to file a record under § 877. *Cf. Teamsters, Chauffeurs, Warehousemen & Helpers Loc. Union 524 v. Billington,* 402 F.2d 510, 511 (9th Cir. 1968) ("Although parties may be defaulted in a trial court for failing to appear at the trial, on appeal we must consider the record made below and the brief of the appellant.") (emphasis added). Here, there is no record to consider. Thus, default is an appropriate remedy.

8

order setting deadline for filing of replacement brief). Unless an application for extended time to file the brief is made, so that it may be considered before the allotted time has expired, such conduct is viewed as demonstrating a lack of good faith and, barring extraordinary circumstances, constitutes neglect which will not be excused. *See Cmty. Coal. for Media Change,* 646 F.2d at 613 (dismissing an appeal may be appropriate where "conspicuous disregard is shown for case processing rules"); *Barber v. Am. Sec. Bank*, 841 F.2d 1159 (D.C. Cir. 1988) (failing to file a timely appellate brief, and failure to file a motion for extension, warranted dismissal of appeal absent showing of "extraordinary and compelling circumstances").

Rule 31 provides a useful analogy. There is no doubt DEA was required to file the record. *See Pitman v. U.S. Citizenship and Immigration Servs.*, 2017 WL 5991738 (D. Utah 2017) (rejecting government's motion to dismiss an APA complaint where USCIS failed to file a record, the court held, "it is the government's burden to file the administrative record in APA review cases and to certify that it is complete. . . . 'When parties ignore this customary practice, they undermine a court's ability to perform meaningful review of agency action.'") (citations omitted). The Court's default notice made that plain as day. DEA neither filed it, explained its failure to file it, or requested relief before the second deadline passed. In this

9

circumstance, Rule 31 provides a useful analog, lest the Court discourage neglect in one scenario but encourage it in others.

## II.    If the Court Remands to DEA, It Should Give Instructions and Reset the Briefing Schedule

In light of DEA's default, the Court could remand to the agency.  There are cases, not directly comparable to this one, where courts have directed remand when an agency failed to file the record.  Those cases seem limited to actions originating in the district court, as opposed to situations like § 877 review.  *United States v. Mendez*, 48 F.3d 1401 (5th Cir. 1995), is one example.   There, a petitioner challenged an award of civil penalties assessed by the National Oceanic and Atmospheric Administration under the Endangered Species Act, 16 U.S.C. 1531 *et seq*.  *Id.* at 1403.  The district court granted summary judgment for the government even though it failed to file the full administrative record.  *Id.*  The Fifth Circuit found error, reversed, and remanded.[8]  *Id.* at 1409; *see also Atieh v. Riordan*, 727 F.3d 73, 77 (1st Cir. 2013) (reversing and remanding to district court that lacked a

---

[8] This, despite the government's argument that the error was harmless, a position the court found to have "some arguable merit."  *Id.* at 1409.  Not knowing what the full record would show, the court found the absence of "crucial portions" of the record was enough for reversal.  *Id.* at 1410.

full record, explaining "a court should not be required to guess at whether or not it has the complete administrative record").

Here, even assuming remand is an available option, the present circumstances do not warrant it. If there was an adequate record, DEA would have filed it. It cannot contest that it failed to afford itself an obvious option to quiet its concerns: simply requesting more information under 21 C.F.R § 1303(b). It failed to act by the statutory deadline, which would have given Ascent time to exercise any right to an administrative hearing. 21 C.F.R § 1301.43.[9] It denied the application only after Ascent sought court intervention. Remand would just run more time off Ascent's ticking doomsday clock—after an entire year without any meaningful revenue.

Should this Court disagree, we respectfully make two requests. First, that any remand should come with specific instructions for DEA to address Ascent's position that the allegations of recordkeeping violations—to the extent these lurked behind the scenes of the Decision—are erroneous. This is a Kafkaesque nightmare for Ascent. Its expert swears any recordkeeping errors are few and of a clerical nature. (*See* Dkt. 8 at 162-164, ¶ 21-32.) If true, the denial of procurement quota would represent bureaucratic insanity (especially since we cannot find a single instance of

---

[9] Ascent filed a Complaint on November 7, 2023, seeking an order deeming DEA's administrative judge appointment process unconstitutional. *See Ascent Pharm. v. Garland*, No. 2023-cv-08260 (E.D.N.Y. Nov. 7, 2023).

a denial based on recordkeeping issues alone, a point we made in our emergency motion papers, which DEA never addressed). If true, the Court can appreciate the unfairness to Ascent, its employees (those remaining and those laid off), and the patients who rely on it for the already constricted supply of ADHD medications.[10] Second, that any remand happen on a very tight timeframe, since DEA is apparently using its "lack of confidence" mantra to withhold Ascent's quota for 2024, too— which will surely kill the company.

In the event of remand, the Court would obviously issue a new scheduling order. Mindful that the confluence of events leaves us two days away from the deadline of our opening brief, and in abundance of caution, we request an "extraordinary circumstance" adjournment under Rule 27.1(f). Here, DEA's failure to file a record can only be described as constituting such an aberrant situation.[11] *Cf. Andrulis Rsch. Corp. v. U.S. Small Bus. Admin.*, No. CIV. A. 90-2569 (CRR),

---

[10] The country has been suffering from a shortage of ADHD medication for over a year. (*See* Dkt. 8 at 3.)

[11] Should the Court deny this request, we ask it to treat the instant motion as Petitioner's Opening Brief pursuant to its November 14, 2023 Order, (*see* Dkt. 27). *See In re Stone Container Corp.*, 360 F.3d 1216, 1218, 1220 (10th Cir. 2004) (approving petitioner's request to treat mandamus petition as opening brief on appeal).

1990 WL 169318, at *2 (D.D.C. Oct. 19, 1990) (court extended statutory deadline based on improper agency delay).

## III.    The Court Should Not Ignore the Error

Certainly, courts have authority to excuse errors, though we have not seen an example of that for failing to file a record in a proceeding under § 877.  Filing a record is mandated by the APA, which instructs courts, when reviewing agency action, to "review the whole record or those parts of it cited by a party."  5 U.S.C. § 706.

In the context of a review of a decision by the National Labor Relations Board (the "NLRB"), the Seventh Circuit held such an error harmless.  *See N.L.R.B. v. Int'l Bhd. Of Elec. Workers, Loc. Union 16, AFL-CIO*, 425 F.3d 1035 (7th Cir. 2005); *see also Abdulai v. Attorney General*, 2022 WL 3226617, *4 n.7 (3d Cir. 2022) (allowing government to supplement a filed record and finding no prejudice to petitioner).  There, the NLRB filed the record in 74 days instead of within the required 40-day deadline.  The court held the error harmless because there had been "no demonstration of prejudice" to the respondent. *N.L.R.B.,* 425 F.3d at 1039.

That case is inapposite; the error is not harmless here.  DEA filed no record and the Court ordered the appeal expedited for a reason (which we suspect reflected the fact that DEA never meaningfully contested irreparable harm in responding to

13

Ascent's emergency motion).[12]   Putting aside prejudice, it is difficult to imagine how the Court could conduct any meaningful agency review without a record. *See Atieh*, 727 F.3d at 77 ("When parties ignore this customary practice [filing the agency record], they undermine a court's ability to perform meaningful review of agency action.").

But, if the Court disagreed, it would be forced to chart a new course: reviewing the Decision on facial sufficiency.  If authority exists for that option, we have not found it. *See Visels*, 593 F. App'x 12, 16 (2d Cir. 2014) (focusing appellate review on the agency record to gauge whether agency's decision was based on satisfactory reasoning).  Sustaining the Decision based on DEA's sole reasoning— lacking "confidence" in Ascent's data—would be tantamount to a rubber stamp.

A "fundamental" requirement of administrative law is that an agency explains the reasons for its decision.  A failure to do so, by definition, "constitutes arbitrary and capricious agency action." *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001); *see also Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019) (to permit meaningful judicial review, "an agency must 'disclose the basis' of its action").  An agency is required to "make findings that support its decision, and

---

[12] Indeed, there is only one reference to "irreparable injury" in DEA's opposition to the emergency motion, which can be found in its restatement of the standard for injunctive relief;  DEA does not otherwise address the issue. (*See* Dkt. 23 at 12.)

those findings must be supported by substantial evidence," and "give clear indication that it has exercised the discretion with which Congress has empowered it." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). The decision "must be set forth with such clarity as to be understandable." *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947). An agency decision should not be sustained if it leaves a court "compelled to guess at the theory underlying the agency's action." *Id*. The Supreme Court's reasoning in *Chenery* is worth elaboration here:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. *If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis*. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.
>
> We also emphasized in our prior decision an important corollary of the foregoing rule. If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; *nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive*. In other words, 'We must know what a

15

decision means before the duty becomes ours to say whether it is right or wrong.'

*Id*. (citing *United States v. Chicago, M., St. P. & P.R. Co.*, 294 U.S. 499, 511 (1935)) (emphasis added); *see also Recinos De Leon v. Gonzales*, 400 F.3d 1185, 1190 (9th Cir. 2005) (even where record filed, remanding to agency where the record left the court unable to "tell what factual and legal determinations" the agency made); *N.L.R.B. v. Columbia Univ.*, 541 F.2d 992, 930 (2d Cir. 1976) (remanding where, based on review of the record, "[a]t the very least, the [agency's] decision [was] too ambiguous"). DEA's threadbare statement in the Decision cannot withstand *Chenery's* requirements.

*Tourus Records, Inc. v. DEA* is also on point. There, DEA denied claimant's application for leave to proceed in forma pauperis in a forfeiture proceeding. 259 F.3d at 737. DEA's denial letter said nothing more than claimant's petition was "not adequately supported." *Id.* The D.C. Circuit found DEA's denial letter to be "not a statement of reasoning, but of conclusion." *Id.* Although the court found other reasons in the agency record to be sufficient, the court concluded that the letter did "not meet the APA standard" or "articulate a satisfactory explanation for the

agency's decision." *Id.* (citation omitted).  It "provide[d] no basis upon which we could conclude that it was the product of reasoned decisionmaking."  *Id.*

So too here.  The statement that DEA "lacks confidence" in the data in the Quota Applications is nothing more than a conclusion.  DEA failed to explain the reasons underlying its lack of confidence.  It neither identified questioned data or explained the basis of any concern.  The Decision is, quite frankly, a black box.  The Court cannot and should not "chisel" clarity in the abyss.  By then failing to provide the record or any stated reasons, the Court should render a decision on the merits, since neither the Decision nor the missing record are sustainable under the APA.

## CONCLUSION

For the foregoing reasons, the Court should grant Ascent's motion for a default judgment.  If the Court decides to remand instead, we respectfully request that it do so with instructions and modifying or enlarging the schedule for Ascent's opening brief.  If the Court determines DEA's error to be harmless, we request that the Court treat this motion as Ascent's opening brief and grant the Petition under the APA.

Dated:  New York, NY
         December 17, 2023

Respectfully submitted,

**WALDEN MACHT & HARAN LLP**

By:    /s/      *Jim Walden*

Jim Walden
250 Vesey Street, 27th Floor
New York, NY 10281
Tel: (212) 335-2030
jwalden@wmhlaw.com

*Counsel for Petitioner Ascent*
*Pharmaceuticals, Inc.*

18

## <u>CERTIFICATE OF COMPLIANCE</u>

Jim Walden, an attorney of Walden Macht & Haran LLP, hereby certifies that this motion complies with the typeface and volume limitations of Rules 27 and 32 of the Federal Rules of Appellate Procedure because this motion contains 4,069 words, excluding the parts of the motion exempted by Fed. R. App. P. 27(d), and has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font, in accordance with Fed. R. App. P. 32(a)(5)-(6).

Dated:  New York, NY
        December 17, 2023

        /s/          *Jim Walden*
                Jim Walden

19

## <u>CERTIFICATE OF SERVICE</u>

Jim Walden, an attorney at Walden Macht & Haran LLP, hereby certifies that

on December 17, 2023, the foregoing motion was filed with the Clerk of the Court

for the United States Court of Appeals for the Second Circuit by using the appellate

CM/ECF system. All participants in the case are registered CM/ECF users and will

be served by the appellate CM/ECF system.

Dated:  New York, NY
        December 17, 2023

                /s/          *Jim Walden*
                        Jim Walden

**ASCENT PHARMACEUTICALS, INC.**

*Petitioner*,

v.

**UNITED STATES DRUG ENFORCEMENT ADMINISTRATION,**

*Respondent.*

No. 23-7246

## <u>DECLARATION OF JIM WALDEN</u>

Jim Walden, an attorney licensed to practice in the State of New York, affirms under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.    I am a Partner at the law firm of Walden Macht & Haran LLP, which is located at 250 Vesey Street, 27th Floor, New York, New York 10281. I am counsel for Petitioner Ascent Pharmaceuticals, Inc. ("Ascent"), in the above-captioned matter.

2.    I submit this Declaration in support of Ascent's Motion for Default Judgment (the "Motion").

3.    Pursuant to Local Rule 27.1, on December 15, 2023, I spoke by phone with Urja Mittal, counsel of record for Drug Enforcement Administration ("DEA"), and informed her that Ascent planned to file the Motion. Ms. Mittal did not indicate whether DEA opposed the Motion or whether it intended to file a response.

4.    Exhibit 1 to the Motion is a true and correct copy of a letter, digitally signed by Matthew J. Strait, Deputy Assistant Administrator, Office of Diversion Control Policy, DEA Diversion Control Division, on September 29, 2023, addressed to Venkatasubramanian Jayaraman at Ascent, denying Ascent's applications for procurement quota for 2023.

Executed on this 17th day of December, 2023.

*/s/ Jim Walden*

Jim Walden

# EXHIBIT 1



**U. S. Department of Justice**
Drug Enforcement Administration

8701 Morrissette Drive
Springfield, Virginia 22152

---

*www.dea.gov*

Ascent Pharmaceuticals, Inc.
400 South Technology Drive
Central Islip, New York 11722

Attn: Mr. Venkatasubramanian Jayaraman

Dear Registrant:

    This letter is in response to your application(s) to the Drug Enforcement Administration (DEA) for 2023 procurement quota(s) for DEA registration number RA0448503.

    After considering all of the information provided in your application(s), DEA **DENIES** your request for quota.  DEA establishes your 2023 procurement quota(s), in kilograms (kg) of anhydrous base, as follows:

| DEA Drug Code No. | Name of Drug/Chemical | Quantity in kg |
| --- | --- | --- |
| 1100 | d,l-amphetamine | **DENIED** |
| 1100 | d-amphetamine (for sale) | **DENIED** |
| 7370 | delta-9-tetrahydrocannabinol | **DENIED** |
| 1724 | dexmethylphenidate (for sale) | **DENIED** |
| 9193 | hydrocodone (for sale) | **DENIED** |
| 9150 | hydromorphone | **DENIED** |
| 1205 | lisdexamfetamine | **DENIED** |
| 9250 | methadone | **DENIED** |
| 1724 | methylphenidate (for sale) | **DENIED** |
| 9143 | oxycodone (for sale) | **DENIED** |
| 9652 | oxymorphone (for sale) | **DENIED** |

In considering Ascent's requests for quota, DEA's Diversion Control Division received records pursuant to DEA's authority under 21 CFR 1303.12(b) to request additional information that "may be helpful in detecting or preventing diversion."  After reviewing these records, DEA lacks confidence in the data provided by Ascent in its quota requests, a relevant "other factor" in reaching quota determinations pursuant to 21 U.S.C. 826(c).

    You are reminded that schedule I and II controlled substances and certain list I chemicals (phenylpropanolamine, pseudoephedrine, and ephedrine) may only be acquired to the extent authorized by the procurement quota(s) issued to your DEA registration in 2023.

Ascent Pharmaceuticals, Inc.                                                                    Page 2

    If you have questions regarding this correspondence, please submit an email to U.N. Reporting and Quota Section, Diversion Control Division at <u>DEAQuotas@dea.gov</u> .

                                        Sincerely,

MATTHEW STRAIT
Digitally signed by MATTHEW STRAIT
Date: 2023.09.29 15:49:53 -04'00'

Matthew J. Strait
Deputy Assistant Administrator
Office of Diversion Control Policy
DEA Diversion Control Division