### UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

### MOTION INFORMATION STATEMENT

**Docket Number(s):** 23-7246

Caption [use short title]

**Motion for:** Opposition to Motion for Default Judgment

and Motion for Clarification of Record Requirement

Ascent Pharmaceuticals, Inc. v. U.S. Drug Enforcement Administration

Set forth below precise, complete statement of relief sought:

Respondent opposes petitioner's motion for default judgment,

seeks clarification of whether a record or

certified index of record is required, and requests a modification

of the briefing schedule

**MOVING PARTY:** U.S. Drug Enforcement Administration    **OPPOSING PARTY:** Ascent Pharmaceuticals, Inc.

☐ Plaintiff          ☐ Defendant

☐ Appellant/Petitioner    ☒ Appellee/Respondent

**MOVING ATTORNEY:** Urja Mittal          **OPPOSING ATTORNEY:** Jim Walden

[name of attorney, with firm, address, phone number and e-mail]

U.S. Department of Justice                    Walden Macht & Haran LLP

950 Pennsylvania Avenue NW, Washington, DC 20530    250 Vesey Street, 27th Floor, New York, NY 10281

202-353-4895, urja.mittal@usdoj.gov          212-335-2031, jwalden@wmhlaw.com

Court- Judge/ Agency appealed from: U.S. Drug Enforcement Administration

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☒ Yes  ☐ No (explain):_____

Opposing counsel's position on motion:
☐ Unopposed  ☐ Opposed  ☒ Don't Know
Does opposing counsel intend to file a response:
☐ Yes  ☐ No  ☒ Don't Know

Is the oral argument on motion requested?  ☐ Yes  ☒ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  ☐ Yes  ☒ No  If yes, enter date:_____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☐ Yes  ☐ No
Has this relief been previously sought in this court?  ☐ Yes  ☐ No

Requested return date and explanation of emergency:_____

_____

_____

_____

**Signature of Moving Attorney:**

Urja Mittal  _Digitally signed by Urja Mittal Date: 2023.12.27 11:54:55 -05'00'_  **Date:** 12/27/23    Service : ☒ Electronic  ☐ Other [Attach proof of service]

**Form T-1080** (rev. 10-23)

# No. 23-7246

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————

ASCENT PHARMACEUTICALS, INC.,

Petitioner,

v.

UNITED STATES DRUG ENFORCEMENT ADMINISTRATION,

Respondent.

———————

## RESPONDENT'S OPPOSITION TO MOTION FOR DEFAULT
## JUDGMENT AND MOTION FOR CLARIFICATION OF
## RECORD REQUIREMENT

———————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

MARK B. STERN
URJA MITTAL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7248*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-4895*

## INTRODUCTION

The United States Drug Enforcement Administration (DEA) respectfully opposes petitioner Ascent Pharmaceuticals, Inc.'s motion for default judgment and moves for a clarification of whether the agency is required to file a record or certified index of record and for a modified briefing schedule.

Ascent is a generic pharmaceutical company that applied to DEA for procurement quotas for various controlled substances. A subsequent DEA investigation found that tens of millions of dosage units of controlled substances—including oxycodone, hydrocodone, and methylphenidate—were unaccounted for in Ascent's records. DEA served Ascent with an order to show cause why Ascent's registrations should not be revoked, and the following day, DEA issued a letter denying Ascent's quota applications to procure additional controlled substances.

The Controlled Substances Act (CSA) provides that a dissatisfied quota applicant, as well as any DEA registrant that receives a show cause order, is entitled to an evidentiary hearing before an administrative law judge. Following the hearing, the administrative law judge certifies the record of the proceedings and prepares a recommended decision. Then, the DEA Administrator issues the final decision. The Administrator's decision is reviewable in the court of appeals. On the order to show cause, Ascent sought a hearing before an administrative law judge and then promptly filed suit in the U.S. District Court for the Eastern District of New York to challenge the administrative law judge's constitutionality.

Ascent charted a different course with regard to its quota applications. Ascent bypassed administrative review and instead filed a petition for review in this Court, urging that the agency's quota denial letter, which is issued at the start of the administrative review process, contained inadequate reasoning. Ascent also filed an emergency motion seeking a preliminary injunction directing DEA to grant Ascent its requested controlled-substance quotas, notwithstanding DEA's outstanding show cause order and quota denial letter. This Court denied Ascent's motion and set a briefing schedule on Ascent's petition for review.

Instead of filing its opening brief, however, Ascent filed a motion seeking what it describes as a "default judgment" two days before its opening brief was due. Ascent's purported ground for this motion is that DEA did not file a record within 40 days of the filing of a petition for review, as would generally be required following the filing of an ordinary petition for review under Federal Rule of Appellate Procedure 17.

Petitioner's motion is without basis and should be denied. In seeking review in this Court at this stage of the agency proceedings, Ascent improperly circumvented administrative review of the initial quota denial letter. Administrative review would have resulted in a reviewable decision from the DEA Administrator based on an administrative record prepared and certified by an administrative law judge. DEA did not file a record in this Court after the petition for review was filed because the administrative proceedings had not yet reached the stage where such record would have been prepared pursuant to the CSA and its implementing regulations. In any

2

event, DEA's filing of a record out of time would not be a basis for granting Ascent the relief it seeks.

DEA therefore respectfully asks the Court to clarify whether the filing of a record or certified index of record is required when a petitioner short-circuits the requirements for administrative and judicial review as Ascent has done here.  Given the uncertainty that now exists as to DEA's obligations and to avoid further delay, DEA is working to identify the materials that were considered by the agency in issuing the initial quota denial letter, in the event the Court concludes that it would be appropriate for DEA to file a record of this kind.  DEA believes that it will be able to file a record containing these materials by January 16, 2024.  DEA does not object to an extension of petitioner's briefing time and asks that the government's brief be due two weeks after the filing of petitioner's brief, but no earlier than January 30, 2024.

## STATEMENT OF THE CASE

### A.  Statutory and Regulatory Background

1.  Under the CSA, DEA establishes quotas each year for the quantity of controlled substances that individuals and entities can procure and manufacture.  21 U.S.C. § 826.  These quotas limit the production and distribution of the controlled substances with the highest degree of abuse potential to the quantity of each substance that is needed for legitimate medical and scientific purposes.  *See Phenmetrazine Quotas—1977*, 43 Fed. Reg. 6169, 6171 (Feb. 13, 1978).  Registered pharmaceutical manufacturers may apply to DEA for individual procurement quotas

3

each year, which establish the maximum quantity of a controlled substance that the manufacturer may acquire that year. 21 U.S.C. § 826(c); 21 C.F.R. §§ 1303.03(c), 1303.15.

The CSA and its implementing regulations create a scheme for administrative and judicial review of DEA's quota decisions. If an applicant is dissatisfied with the agency's initial decision on its quota application, the applicant may request a hearing before an administrative law judge. 21 C.F.R. § 1303.34(a). At the hearing, the applicant may present factual evidence and argument regarding its quota application. *Id.* § 1303.32(b). The administrative law judge then prepares recommended findings of fact and conclusions of law and a recommended decision. *Id.* §§ 1303.31(b), 1316.65(a). The administrative law judge must also "certify to the Administrator the record, which shall contain the transcript of testimony, exhibits, the findings of fact and conclusions of law proposed by the parties, the presiding officer's report, and any exceptions thereto which may have been filed by the parties." *Id.* § 1316.65(c).

The applicant and the agency may file exceptions to the recommended decision, findings of fact, and conclusions of law. 21 C.F.R. § 1316.66(a)-(c). The Administrator reviews the certified record, recommended findings and conclusions of law, recommended decision, and exceptions and issues a final order on the quota application. *Id.* §§ 1303.37, 1316.67. The applicant may seek judicial review of the Administrator's decision in the court of appeals. 21 U.S.C. § 877.

2.  The CSA also establishes registration requirements for the manufacturers and distributors of controlled substances.  21 U.S.C. §§ 823, 958.  The Administrator may suspend or revoke a registration for a variety of reasons, including if the registrant "has committed such acts as would render his registration … inconsistent with the public interest" under 21 U.S.C. § 823.  *Id.* § 824(a)(1)-(5); *see also* 21 C.F.R. § 1301.36(a)-(c).  Before revoking or suspending a registration, the Administrator must issue an order to show cause why the registration should not be revoked or suspended.  21 U.S.C. § 824(c); 21 C.F.R. § 1301.36(d).  The registrant may request a hearing on the order to show cause.  21 C.F.R. § 1301.37(d).  Detailed administrative procedures govern the resolution of challenges to the order to show cause.  *Id.* §§ 1301.41-46.

### B.    Factual Background

1.  Ascent Pharmaceuticals, Inc., is a generic pharmaceutical company in Central Islip, New York, that is registered with DEA as a dosage form manufacturer and analytical lab.  Jayaraman Decl., Dkt. No. 8, Ex. 12, ¶¶ 1-2 (OSC).[1]  In 2022, Ascent applied to DEA for procurement quotas for 11 controlled substances.  Dkt. No. 8 at 4.  A subsequent DEA investigation, which included multiple on-site audits, uncovered extensive recordkeeping violations at the company.  DEA found that tens

---

[1] Ascent attached DEA's order to show cause to its emergency motion for preliminary injunctive relief, *see* Dkt. No. 8, as Exhibit 12 to the Jayaraman Declaration and cited in this brief as "OSC."

of millions of dosage units of controlled substances—including oxycodone, hydrocodone, methylphenidate, and amphetamine—were unaccounted for in records held by Ascent and its distributor.  OSC ¶¶ 7, 16-54.  DEA served Ascent with an order to show cause why DEA should not revoke Ascent's registrations, which detailed DEA's concerns with Ascent's recordkeeping and handling of controlled substances.  *Id.*

The following day, DEA issued a letter denying Ascent's applications to procure additional quota of controlled substances in 2023.  The letter stated that "[i]n considering Ascent's requests for quota, DEA's Diversion Control Division received records pursuant to DEA's authority under 21 CFR 1303.12(b) to request additional information that 'may be helpful in detecting or preventing diversion,'" and that "[a]fter reviewing these records, DEA lacks confidence in the data provided by Ascent in its quota requests, a relevant 'other factor' in reaching quota determinations pursuant to 21 U.S.C. 826(c)."  Dkt. No. 2 at 1.[2]

2.  Ascent sought further review of the allegations in the order to show cause by requesting a hearing before an administrative law judge.  Shortly thereafter, Ascent filed suit in the U.S. District Court for the Eastern District of New York to challenge the constitutionality of the administrative law judge.  In light of the suit, the

---

[2] Pursuant to a rule that took effect on November 29, 2023, 21 C.F.R. § 1303.12 was moved to 21 C.F.R. § 1303.15.  *Management of Quotas for Controlled Substances and List I Chemicals*, 88 Fed. Reg. 60117, 60128 (Aug. 31, 2023).

administrative law judge assigned to Ascent's show-cause proceedings placed those administrative proceedings into abeyance.

By contrast, Ascent chose not to seek administrative review of DEA's quota denial.  Although the CSA regulations governing the quota application process similarly provide that an applicant that seeks to challenge the agency's initial quota determination should request an administrative hearing, Ascent did not seek a hearing to present its objections.  Instead, two business days later, Ascent filed a petition for review of DEA's initial quota denial, Dkt. No. 3, followed by an emergency motion for preliminary injunctive relief the next morning, Dkt. No. 8.  Ascent's emergency motion sought a court order compelling DEA to grant Ascent's requested controlled-substance quotas.  *Id.* at 2.  DEA opposed, explaining that Ascent had bypassed the administrative procedures for challenging the quota denial and for obtaining a fully reasoned decision from the agency, and therefore could not seek review of the quota denial in federal court on the grounds that it was inadequately reasoned.  Dkt. No. 23. This Court denied Ascent's motion.  Dkt. No. 27.

On December 4, 2023, this Court issued a notice informing the agency that it was required to file a record in this case pursuant to Federal Rule of Appellate Procedure 17.  Dkt. No. 28.  DEA did not understand the Rule 17 record requirement to apply to Ascent's petition for review, because Ascent had circumvented the administrative process in which the administrative record would be compiled and certified and the case was improperly before this Court.  Counsel for the government

conveyed to the Clerk's Office for this Court that DEA was nevertheless assessing how long it would take to assemble a record in this situation and would notify the Court accordingly. On December 17, two days before Ascent's merits brief was due, Ascent filed a motion for "default judgment" asking the Court to grant its petition on the ground that the record had not yet been filed. Dkt. No. 29.

## ARGUMENT

Rather than file its opening brief, Ascent filed a motion for what it describes as a "default judgment." Ascent grounds its extraordinary request on the fact that DEA had not filed an administrative record or certified index of record within 40 days of the filing of its petition. Ascent's arguments fail at every turn and underscore the anomaly of Ascent's attempt to seek judicial review before seeking administrative review. Had Ascent sought administrative review of the agency's quota denial before coming to this Court—as the CSA and its implementing regulations require—Ascent would have obtained a reasoned decision from the DEA Administrator, accompanied by a certified administrative record containing the documents that the Administrator relied on in arriving at her decision.

**A. 1.** The CSA creates a comprehensive scheme for administrative and judicial review of a broad range of DEA determinations, including preliminary determinations regarding quota applications and registrations. An applicant dissatisfied with DEA's response to its quota application may request a hearing in which the applicant may present factual evidence and argument in support of its position. 21 C.F.R.

8

§ 1303.34(a).  The hearing is overseen by an administrative law judge, who prepares recommended findings of fact and conclusions of law and certifies an administrative record for consideration by the Administrator.  *Id.* § 1316.65(a)-(c).

The applicant and the agency may file exceptions to the administrative law judge's recommended decision, findings of fact, and conclusions of law, which become part of the certified record.  21 C.F.R. § 1316.66(a)-(b).  The Administrator then considers the exceptions, the administrative law judge's recommendations, and the certified record and issues the final order on the quota application; the Administrator's order includes findings of fact and conclusions of law.  *Id.* §§ 1303.37, 1316.67.  Under the CSA, "[a]ll final determinations, findings, and conclusions of the Attorney General under this subchapter shall be final and conclusive decisions of the matters involved, except that any person aggrieved by a final decision of the Attorney General may obtain review of the decision" in a federal court of appeals.  21 U.S.C. § 877.  On judicial review, "[f]indings of fact by the Attorney General, if supported by substantial evidence, shall be conclusive."  *Id.*

**2.**  Under this administrative review scheme, established pursuant to the CSA and unchallenged here, the "record" is the record certified by the administrative law judge for review by the Administrator.  *See* 21 C.F.R. § 1316.65(c) (providing that the administrative law judge "shall certify to the Administrator the record, which shall contain the transcript of testimony, exhibits, the findings of fact and conclusions of law proposed by the parties, the presiding officer's report, and any exceptions thereto

9

which may have been filed by the parties"). Because Ascent bypassed administrative review, no certified administrative record was ever prepared within the meaning of the CSA and its implementing regulations.

DEA respectfully requests that this Court clarify whether the agency is required to file a record under Rule 17 in these circumstances—specifically, where the petition seeks review of a letter from the agency that is not the culmination of the agency's administrative review procedures under the relevant statute and regulations. In the meantime, to avoid undue delay, DEA is working diligently to identify the materials that were considered in the process of issuing the initial quota denial letter to Ascent. DEA plans to file a certified index of this record by January 16, 2024, in the event the Court concludes that it would be appropriate for DEA to file a record of this kind.

DEA respectfully notes, however, that such a record will not serve the purposes that are meant to be served by the administrative record in a case involving judicial review of an agency decision arising out of a proper petition for review. Ascent's principal complaint in this Court is that the agency's decision is insufficiently reasoned. But Ascent precluded the process that would have resulted in the "final determinations, findings, and conclusions" of the Administrator that are subject to judicial review. 21 U.S.C. § 877; *see also* 21 C.F.R. §§ 1303.37, 1316.67 (referencing the Administrator's decision as the "[f]inal order").

In short, the CSA contemplates that if a regulated entity—in this case, a quota applicant—is dissatisfied with the agency's initial decision, the applicant will first

10

present its challenges to the agency, giving the applicant an opportunity to present its case and the agency and its experts a chance to reassess their views and respond to the applicant's contentions. In this process, the agency may modify or reverse its initial assessment before the issuance of the final decision that is subject to judicial scrutiny. This is how administrative review works across the federal government. *See Washington v. Barr*, 925 F.3d 109, 117 (2d Cir. 2019) (explaining that the CSA "incorporates an administrative process into its structure" and requires petitioners to exhaust administrative remedies before filing a petition for review seeking relief from a DEA decision in federal court). The documents that will make up the record underlying DEA's initial quota denial letter are not a substitute for the certified record and final decision that would be prepared as part of the administrative review process and that would properly serve as the basis for judicial review under the CSA and its implementing regulations.

Ascent's arguments about the issues that will need to be resolved in the event of a remand to the agency highlight the problems inherent in its premature petition for review. Ascent urges that DEA should "address Ascent's position that the allegations of recordkeeping violations—to the extent these lurked behind the scenes of the Decision—are erroneous." Mot. 11. That is precisely the function of an administrative hearing, where the applicant submits evidence and arguments in support of its position, to which the agency responds and which the agency head considers in its final decision. Ascent asserts that "[i]ts expert swears any

11

recordkeeping errors are few and of a clerical nature," though Ascent expresses a certain lack of confidence in this position, stating that "[*i*]*f true*, the denial of procurement quota would represent bureaucratic insanity[.]" *Id.* (emphasis added). Regardless, the proper venue for Ascent's expert testimony is the administrative hearing, where the expert may testify as to the basis of her opinion and be subject to cross-examination; the agency would have the opportunity to respond and explain the basis for its concerns about the company's recordkeeping. All of this would culminate in the creation of a comprehensive administrative record for the Administrator and for judicial review.

In the absence of a proper record and decision from the Administrator, Ascent attempts to recharacterize DEA's recordkeeping concerns as minor disputes about Ascent's bookkeeping. However, DEA's order to show cause details the significant discrepancies in Ascent's records, OSC ¶¶ 16-54, including discrepancies of millions of dosage units of oxycodone, methylphenidate, and hydrocodone between the quantities of controlled substances in Ascent's packaging records and the quantities of controlled substances that were shipped according to packing lists, *id.* ¶¶ 46-47.

**B.** Ascent's attempt to capitalize on its failure to pursue administrative review with its request for a "default judgment" compounds its gamesmanship. An administrative law judge never certified an administrative record because Ascent never sought an administrative hearing. At a minimum, then, it was understandable that the agency would be of the view that no administrative record existed within the meaning

12

of Federal Rule of Appellate Procedure 17. Identifying record materials in these circumstances is a far more time-consuming and resource-intensive process than when a petition for review is properly filed after administrative review. Even if this Court were to conclude that it would be appropriate for the agency to file a record or certified index of record in these circumstances, the fact that a record was not filed within 40 days of the petition could not plausibly be a basis for entry of a "default judgment." That is even more clearly the case given that the Federal Rules of Appellate Procedure do not provide for a "default judgment" disposition. The only cases Ascent cites in support of its request are cases in which the court of appeals upheld a *district* court's decision to grant default judgment under the Federal Rules of Civil Procedure. *See* Mot. 7.

The other decisions on which Ascent seeks to rely do not advance its position either. In *Atieh v. Riordan*, 727 F.3d 73 (1st Cir. 2013), for example, the court explained that the relevant record materials were submitted as attachments but no administrative record had been filed, noting that "[t]he customary practice is for the government to certify that the administrative record is complete, and for the parties to file it with the district court," and "[w]hen parties ignore this customary practice, they undermine a court's ability to perform meaningful review of agency action." *Id.* at 77. The court accordingly remanded for proceedings consistent with the Administrative Procedure Act and declined to reach the merits of the appeal. *Id.* Administrative proceedings are similarly necessary before judicial review in Ascent's case.

13

The D.C. Circuit's decision in *Tourus Records, Inc. v. DEA*, 259 F.3d 731 (D.C. Cir. 2001), is likewise inapplicable. The court in that case considered—and ultimately affirmed—DEA's denial of an application to proceed in forma pauperis in a forfeiture proceeding. *Id.* at 733-34. As explained, the CSA and the agency's implementing regulations establish a comprehensive administrative review framework for decisions on quota applications, and under this framework, initial quota denial decisions are not directly reviewable in the courts of appeals. No parallel framework exists for DEA's decisions on applications to proceed in forma pauperis in forfeiture proceedings, and such decisions may therefore be reviewable in certain cases for reasons specific to that context that are not applicable to controlled-substance quota applications. *See id.* at 734. Jurisdiction in *Tourus Records* was undisputed. Denials of an application to proceed in forma pauperis are collateral to the merits of a dispute, and as the D.C. Circuit noted, denials of an application by a district court may be subject to immediate appellate review. *Id.* Such decisions are fundamentally different from the quota denial letter challenged in this case.

**C.** DEA does not oppose Ascent's motion being treated as its merits brief, as Ascent proposes. *See* Mot. 17. DEA also does not object to an extension of the deadline for Ascent's merits brief to a date following the filing of a record or this Court's determination that the filing of a record is not required.

Lead counsel for the government will be on long-scheduled travel outside the country for two weeks during the government's current briefing period, until January

14

12, 2024.  Accordingly, DEA respectfully requests that its brief be due no earlier than January 30, 2024, or two weeks from the filing of Ascent's opening brief if the deadline for Ascent's merits brief is extended to a date following the filing of the record or certified index of record.  DEA's merits brief will explain in additional detail why this Court should deny Ascent's petition for review.

## CONCLUSION

For the foregoing reasons, the Court should deny petitioner's motion and clarify that no record or certified index of record is required at this juncture.  If the Court determines that it would be appropriate for DEA to file a record or certified index of record at this stage, DEA respectfully requests that this Court set the due date for the record or certified index of record to no earlier than January 16, 2024.  In addition, DEA asks that the Court set the due date for DEA's merits brief to two weeks from the date that petitioner's merits brief is filed, if one is filed, but to no earlier than January 30, 2024.

15

Respectfully submitted,

BRIAN M. BOYNTON
    *Principal Deputy Assistant Attorney*
      *General*

MARK B. STERN

  *s/ Urja Mittal*
_____
URJA MITTAL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7248*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-4895*
  *urja.mittal@usdoj.gov*

December 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,742 words. This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6), because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Urja Mittal*
URJA MITTAL

**ADDENDUM**

# TABLE OF CONTENTS

21 U.S.C. § 877 ................................................................................................ A1

21 C.F.R. § 1303.03 ........................................................................................ A2

21 C.F.R. § 1303.15 ........................................................................................ A3

21 C.F.R. § 1303.31 ........................................................................................ A6

21 C.F.R. § 1303.32 ........................................................................................ A7

21 C.F.R. § 1303.34 ........................................................................................ A8

21 C.F.R. § 1303.37 ........................................................................................ A9

21 C.F.R. § 1316.67 ...................................................................................... A10

**21 U.S.C. § 877 – Judicial review**

All final determinations, findings, and conclusions of the Attorney General under this subchapter shall be final and conclusive decisions of the matters involved, except that any person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located upon petition filed with the court and delivered to the Attorney General within thirty days after notice of the decision. Findings of fact by the Attorney General, if supported by substantial evidence, shall be conclusive.

**21 C.F.R. § 1303.03 – Types of quotas**

The three types of quotas are:

(a) Aggregate production quotas, which establish the total quantity of each basic class of schedules I and II controlled substances that may be produced by all manufacturers in a calendar year.

(b) Individual manufacturing quotas, which establish the maximum quantity of each basic class of schedules I and II controlled substances that a registered manufacturer may manufacture during a calendar year. This type of quota is only issued to DEA-registered bulk manufacturers.

(c) Procurement quotas, which establish the maximum quantity of each basic class of schedules I and II controlled substances that a registered manufacturer may procure during a calendar year for the purpose of manufacturing into dosage-forms or other substances.

**21 C.F.R. § 1303.15 – Procurement quotas**

(a) In order to determine the estimated needs for, and to insure an adequate and uninterrupted supply of, basic classes of controlled substances listed in Schedules I and II (except raw opium being imported by the registrant pursuant to an import permit) the Administrator shall issue procurement quotas authorizing persons to procure and use quantities of each basic class of such substances for the purpose of manufacturing such class into dosage forms or into other substances. The Administrator may establish a procurement quota in terms of pharmaceutical dosage-forms prepared from or containing the schedule I or II controlled substance, if they determine it will assist in avoiding the overproduction, shortages, or diversion of a controlled substance.

(b) Any person who is registered to manufacture controlled substances listed in any schedule and who desires to use during the next calendar year any basic class of controlled substances listed in schedule I or II (except raw opium being imported by the registrant pursuant to an import permit) for purposes of manufacturing, shall apply on DEA Form 250 for procurement quota and shall state separately for each subcategory, as defined in 21 CFR 1303.04, each quantity of such basic class. A separate application must be made for each basic class desired to be procured or used. The applicant shall state whether he intends to manufacture the basic class himself or purchase it from another manufacturer. The applicant shall state separately each purpose for which the basic class is desired, the quantity desired for that purpose during the next calendar year, and the quantities used and estimated to be used, if any, for that purpose during the current and preceding 2 calendar years. If the purpose is to manufacture the basic class into dosage form, the applicant shall state the official name, common or usual name, chemical name, or brand name of that form. The Administrator may require additional information from an applicant which, in the Administrator's judgment, may be helpful in detecting or preventing diversion, including customer identities and amounts of the controlled substance sold to each customer. If the purpose is to manufacture another substance, the applicant shall state the official name, common or usual name, chemical name, or brand name of the substance, and, if a controlled substance listed in any schedule, the schedule number and Administration Controlled Substances Code Number, as set forth in part 1308 of this chapter, of the substance. If the purpose is to manufacture another basic class of controlled substance listed in Schedule I or II, the applicant shall also state the quantity of the other basic class which the applicant has applied to manufacture pursuant to § 1303.22 and the quantity of the first basic class necessary to manufacture a specified unit of the second basic class. DEA Form 250 shall be filed on or before April 1 of the year preceding the calendar year for which the procurement quota is being applied. Copies of DEA Form 250 may be obtained from, and shall be filed with, the UN Reporting and Quota Section, Diversion Control

A3

Division. See the Table of DEA Mailing Addresses in § 1321.01 of this chapter for the current mailing address.

(c) The Administrator shall, on or before December 1 of the year preceding the calendar year during which the quota shall be effective, issue to each qualified applicant a procurement quota authorizing him to procure and use:

(1) All quantities of such class necessary to manufacture all quantities of other basic classes of controlled substances listed in Schedules I and II which the applicant is authorized to manufacture pursuant to § 1303.23; and

(2) Such other quantities of such class as the applicant has applied to procure and use and are consistent with his past use, his estimated needs, and the total quantity of such class that will be produced.

(d) Any person to whom a procurement quota has been issued may at any time request an adjustment in the quota by applying to the Administrator with a statement showing the need for the adjustment. Such application shall be filed with the UN Reporting and Quota Section, Diversion Control Division. See the Table of DEA Mailing Addresses in § 1321.01 of this chapter for the current mailing address. The Administrator shall increase or decrease the procurement quota of such person if and to the extent that he finds, after considering the factors enumerated in paragraph (c) of this section and any occurrences since the issuance of the procurement quota, that the need justifies an adjustment.

(e) The following persons need not obtain a procurement quota:

(1) Any person who is registered to manufacture a basic class of controlled substance listed in Schedule I or II and who uses all of the quantity he manufactures in the manufacture of a substance not controlled under the Act;

(2) Any person who is registered or authorized to conduct chemical analysis with controlled substances (for controlled substances to be used in such analysis only); and

(3) Any person who is registered to conduct research with a basic class of controlled substance listed in Schedule I or II and who is authorized to manufacture a quantity of such class pursuant to § 1301.13 of this chapter.

(f) Any person to whom a procurement quota has been issued, authorizing that person to procure and use a quantity of a basic class of controlled substances listed in Schedules I or II during the current calendar year, shall, at or before the time of giving an order to another manufacturer requiring the distribution of a quantity of such basic class, certify in writing to such other registrant that the quantity of such basic class ordered does not exceed the person's unused and available procurement quota of such basic class for the current calendar year. The written certification shall be

A4

executed by the same individual who signed the DEA Form 222 transmitting the order. A registrant shall not fill an order from persons required to apply for a procurement quota under paragraph (b) of this section unless the order is accompanied by a certification as required under this section. The certification required by this section shall contain the following: The date of the certification; the name and address of the registrant to whom the certification is directed; a reference to the number of the DEA Form 222 to which the certification applies; the name of the person giving the order to which the certification applies; the name of the basic class specified in the DEA Form 222 to which the certification applies; the appropriate schedule within which is listed the basic class specified in the DEA Form 222 to which the certification applies; a statement that the quantity (expressed in grams) of the basic class specified in the DEA Form 222 to which the certification applies does not exceed the unused and available procurement quota of such basic class, issued to the person giving the order, for the current calendar year; and the signature of the individual who signed the DEA Form 222 to which the certification applies.

**21 C.F.R. § 1303.31 – Hearings generally**

(a) In any case where the Administrator shall hold a hearing regarding the determination of an aggregate production quota pursuant to § 1303.11(c), or regarding the adjustment of an aggregate production quota pursuant to § 1303.13(c), the procedures for such hearing shall be governed generally by the rule making procedures set forth in the Administrative Procedure Act (5 U.S.C. 551–559) and specifically by section 306 of the Act (21 U.S.C. 826), by §§ 1303.32–1303.37, and by the procedures for administrative hearings under the Act set forth in §§ 1316.41–1316.67 of this chapter.

(b) In any case where the Administrator shall hold a hearing regarding the issuance, adjustment, suspension, or denial of a procurement quota pursuant to § 1303.12, or the issuance, adjustment, suspension, or denial of an individual manufacturing quota pursuant to §§ 1303.21–1303.27, the procedures for such hearing shall be governed generally by the adjudication procedures set forth in the Administrative Procedures Act (5 U.S.C. 551–559) and specifically by section 306 of the Act (21 U.S.C. 826), by §§ 1303.32–1303.37, and by the procedures for administrative hearings under the Act set forth in §§ 1316.41–1316.67 of this chapter.

**21 C.F.R. § 1303.32 – Purpose of hearing**

(a) The Administrator may, in his sole discretion, and shall, if determined by the Administrator to be necessary under § 1303.11(c) or 1303.13(c) based on objection by a state, hold a hearing for the purpose of receiving factual evidence regarding any one or more issues (to be specified by him) involved in the determination or adjustment of any aggregate production quota.

(b) If requested by a person applying for or holding a procurement quota or an individual manufacturing quota, the Administrator shall hold a hearing for the purpose of receiving factual evidence regarding the issues involved in the issuance, adjustment, suspension, or denial of such quota to such person, but the Administrator need not hold a hearing on the suspension of a quota pursuant to § 1301.36 of this chapter separate from a hearing on the suspension of registration pursuant to those sections.

(c) Extensive argument should not be offered into evidence but rather presented in opening or closing statements of counsel or in memoranda or proposed findings of fact and conclusions of law.

**21 C.F.R. § 1303.34 – Request for hearing or appearance; waiver**

(a) Any applicant or registrant who desires a hearing on the issuance, adjustment, suspension, or denial of his procurement and/or individual manufacturing quota shall, within 30 days after the date of receipt of the issuance, adjustment, suspension, or denial of such quota, file with the Administrator a written request for a hearing in the form prescribed in § 1316.47 of this chapter. Any interested person who desires a hearing on the determination of an aggregate production quota shall, within the time prescribed in § 1303.11(c), file with the Administrator a written request for a hearing in the form prescribed in § 1316.47 of this chapter, including in the request a statement of the grounds for a hearing.

(b) Any interested person who desires to participate in a hearing on the determination or adjustment of an aggregate production quota, which hearing is ordered by the Administrator pursuant to § 1303.11(c) or § 1303.13(c) may do so by filing with the Administrator, within 30 days of the date of publication of notice of the hearing in the Federal Register, a written notice of his intention to participate in such hearing in the form prescribed in § 1316.48 of this chapter.

(c) Any person entitled to a hearing or to participate in a hearing pursuant to paragraph (b) of this section, may, within the period permitted for filing a request for a hearing of notice of appearance, file with the Administrator a waiver of an opportunity for a hearing or to participate in a hearing, together with a written statement regarding his position on the matters of fact and law involved in such hearing. Such statement, if admissible, shall be made a part of the record and shall be considered in light of the lack of opportunity for cross-examination in determining the weight to be attached to matters of fact asserted therein.

(d) If any person entitled to a hearing or to participate in a hearing pursuant to paragraph (b) of this section, fails to file a request for a hearing or notice of appearance, or if he so files and fails to appear at the hearing, he shall be deemed to have waived his opportunity for the hearing or to participate in the hearing, unless he shows good cause for such failure.

(e) If all persons entitled to a hearing or to participate in a hearing waive or are deemed to waive their opportunity for the hearing or to participate in the hearing, the Administrator may cancel the hearing, if scheduled, and issue his final order pursuant to § 1303.37 without a hearing.

**21 C.F.R. § 1303.37 – Final order**

As soon as practicable after the presiding officer has certified the record to the Administrator, the Administrator shall issue his order on the determination or adjustment of the aggregate production quota or on the issuance, adjustment, suspension, or denial of the procurement quota or individual manufacturing quota, as case may be. The order shall include the findings of fact and conclusions of law upon which the order is based. The order shall specify the date on which it shall take effect. The Administrator shall serve one copy of his order upon each party in the hearing.

**21 C.F.R. § 1316.67 – Final order**

As soon as practicable after the presiding officer has certified the record to the Administrator, the Administrator shall cause to be published in the Federal Register his final order in the proceeding, which shall set forth the final rule and the findings of fact and conclusions of law upon which the rule is based. This order shall specify the date on which it shall take effect, which date shall not be less than 30 days from the date of publication in the Federal Register unless the Administrator finds that the public interest in the matter necessitates an earlier effective date, in which event the Administrator shall specify in the order his findings as to the conditions which led him to conclude that an earlier effective date was required.