UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

ASCENT PHARMACEUTICALS, INC.,

                 *Petitioner,*

        v.

UNITED STATES DRUG ENFORCEMENT
ADMINISTRATION,

                 *Respondent.*

No. 23-7246

**REPLY TO RESPONDENT'S DEFAULT-JUDGMENT OPPOSITION
AND OPPOSITION TO RESPONDENT'S CLARIFICATION/
EXTENSION MOTIONS**

JIM WALDEN
*WALDEN MACHT & HARAN LLP*
Counsel for Petitioner
250 Vesey Street, 27th Floor
New York, NY 10281
(212) 335-2030

Dated: January 3, 2024

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

I.     The Court should grant Ascent's motion for default judgment. .....................2

   A.   DEA was required to keep a record. ...............................................................2

   B.   Pursuing § 877 review does not excuse DEA's recordkeeping obligation. ....6

       1.   Irreparable Harm ........................................................................................7

       2.   Futility .......................................................................................................8

       3.   Constitutional Bar to Administrative Review ..........................................10

   C.   DEA offers no defense to its default. ...........................................................10

II.    The Court should reject DEA's motions for "clarification" and
       extension. ......................................................................................................11

CONCLUSION ...................................................................................................15

i

# <u>TABLE OF AUTHORITIES</u>

<u>Pages</u>

## <u>Cases</u>

*Abdulai v. Att'y Gen. United States*,
  No. 20-2305, 2022 WL 3226617 (3d Cir. Aug. 10, 2022)..............................5

*Able v. United States*,
  88 F.3d 1280 (2d Cir. 1996) .......................................................7, 8

*Aggarwal v. Drug Enf't Admin.*,
  No. 22-1718, Dkt. 18 (9th Cir. Nov. 29, 2022) ...............................3

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
  598 U.S. 175 (2023)................................................................10

*Bracco Diagnostics, Inc. v. Shalala*,
  963 F. Supp. 20 (D.D.C. 1997).....................................................8

*Dep't of Com. v. New York*,
  139 S. Ct. 2551 (2019)..............................................................3

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010)................................................................10

*John Doe, Inc. v. Drug Enf't Admin.*,
  484 F.3d 561 (D.C. Cir. 2007)...................................................3, 6

*Lucia v. S.E.C.*,
  138 S. Ct. 2044 (2018)............................................................10

*Matthews v. Freedman*,
  882 F.2d 83 (3d Cir. 1989) .........................................................5

*Morall v. Drug Enf't Admin.*,
  412 F.3d 165 (D.C. Cir. 2005)..................................................8, 12

*N.L.R.B. v. Int'l Bhd. of Elec. Workers*,
  425 F.3d 1035 (7th Cir. 2005) .....................................................5

*Nat. Res. Def. Council v. U.S. E.P.A.*,
  658 F.3d 200 (2d Cir. 2011) .......................................................3

*Newman-Green, Inc. v. Alfonzo-Larrain*,
    490 U.S. 826 (1989) ................................................................5

*Skubel v. Fuoroli*,
    113 F.3d 330 (2d Cir. 1997) ...................................................7

*Tourus Records, Inc. v. Drug Enf't Admin.*,
    259 F.3d 731 (D.C. Cir. 2001) ............................................3, 4

*Visels Drug Store, Inc. v. Drug Enf't Agency*,
    593 F. App'x 12 (2d Cir. 2014) ...............................................3

*Washington v. Barr*,
    925 F.3d 109 (2d Cir. 2019) ....................................................6

**Statutes**

21 U.S.C. § 824(d) ........................................................................9

21 U.S.C. § 877 ...................................................................... passim

5 U.S.C. § 706 ..............................................................................2

**Rules**

21 C.F.R. § 1303.12(c) ................................................................8

21 C.F.R. § 1303.34 .....................................................................6

21 C.F.R. § 1315.32 .....................................................................8

Fed. R. App. P. 17(a) ................................................................2, 5

Fed. R. App. P. 27(d)(2)(A) ........................................................2

Fed. R. App. P. 47(b) ..................................................................5

Fed. R. Civ. P.  21 .......................................................................5

Fed. R. Civ. P. 11 ........................................................................5

**Constitutional Provisions**

U.S. Const. art. II .....................................................................10

## **INTRODUCTION**

DEA opposes Ascent's default motion.[1]  In apparent disregard of this Court's authority, DEA's opposition does not address—and barely even acknowledges—this Court's Default Notice.[2]  DEA essentially treats it as a nullity.  DEA separately moves for clarification of its duty to file the record and an extension of the briefing schedule.  This memorandum covers the landscape.

It is now painfully obvious that DEA maintained no record to explain its quota denial, a highly-significant and rare decision, which caused grave harm to a 13-year old company with no history of regulatory violations and caused collateral damage to ADHD patients in the midst of a national scarcity crisis for their medicines. DEA's opposition trivializes its decision, which should have been based on clear, complete, and balanced reasoning and evaluation of alternatives and potential consequences.  DEA gave none of it.  This Court cannot sustain the slipshod way DEA has acted in this matter, especially given the serious issues raised below.

DEA's position—that a record is required only after administrative review—is frivolous, its request for "clarification" is disingenuous, and its request for more

---

[1] References herein have the same meaning as those from Ascent's opening brief.

[2] DEA's opposition reveals a substantive communication with the Court, *see* Dkt. 30 at 10, of which we were unaware.

time is baseless.  The Court should grant Ascent's motion for a default judgment and deny DEA's motions.

## ARGUMENT

**Section I** below replies to DEA's opposition.[3]  **Section II** below opposes DEA's motions.

## I.  The Court should grant Ascent's motion for default judgment.

A simple syllogism is at play here:  (1) DEA was required to keep a record to explain its quota-denial decision; (2) Ascent's challenge to the decision under 21 U.S.C. § 877 did not change DEA's obligation to keep and file a record; and (3) DEA defaulted on its obligation to file a record, apparently because it kept none. We address each component below.

### A.  DEA was required to keep a record.

The thrust of DEA's opposition is implicit:  an agency record of quota decisions is not required.  That is wrong.  The law requires DEA to keep a record sufficient to justify its decisions.  *See* 5 U.S.C. § 706 (directing courts to "review the whole record or those parts of it cited by a party" in making a determination); Fed. R. App. P. 17(a) ("[t]he agency must file the record . . ."); *Dep't of Com. v. New*

---

[3] Given the Court's decision to expedite review (*see* Dkt. 27), we respond to DEA's motions before the applicable deadline (January 5) and respond to both DEA's opposition and its motions within the 5,200 word limit for a single response.  Rule 27(d)(2)(A).

*York*, 139 S. Ct. 2551, 2573 (2019) (to permit meaningful judicial review, "an agency must 'disclose the basis' of its action") (citation omitted). A "fundamental" requirement of administrative law is that an agency explains the reasons for its decision. *Tourus Records, Inc. v. Drug Enf't Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001) (agency's failure to "set forth its reasons for its decision . . . constitutes arbitrary and capricious agency action") (citation omitted); *Nat. Res. Def. Council v. U.S. E.P.A.*, 658 F.3d 200, 215 (2d Cir. 2011) (record must show that the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action.") (citation omitted).

These authorities are the very reason DEA has filed an agency record or certified list to explain its decisionmaking during § 877 petitions—time after time. *See, e.g., Aggarwal v. Drug Enf't Admin.*, No. 22-1718, Dkt. 18 (9th Cir. Nov. 29, 2022); *Visels Drug Store, Inc. v. Drug Enf't Agency*, No. 13-1703, Dkt. 23 (2d Cir. Dec. 2, 2013); *John Doe, Inc. v. Drug Enf't Admin.*, No. 06-1270 (D.C. Cir. Jan. 19, 2007); *Tourus*, No. 00-1132 (D.C. Cir. Jun 15, 2000). DEA filed a record in each of these cases *despite the absence of a prior administrative proceeding*.

Why is this case different? It isn't. DEA's bald claim that quota decisions are somehow an "anomaly"—DEA's apparent code word for being exempt from statutory duties to record the basis of its decisionmaking—is ironic in a matter where Ascent stands erroneously accused by the agency of recordkeeping violations.

3

Putting that irony aside, DEA's implicit claim that quota decisions somehow deserve less of the agency's care and consideration is jarring. It offends common sense that DEA kept a record in a case like *Tourus* (which involved a simple application to proceed *forma pauperis*) but not one here (which effectively shuttered a 13-year old company with no history of regulatory violations, jeopardizing a $200m investment and hundreds of jobs, and one that supplied 20% of generic ADHD medications in the midst of an acute national shortage). DEA's position that *this is how it should be* is twisted logic. Especially given the rarity and consequences of quota denials, one would expect a more thorough and careful decision, one that weighed the seriousness of the alleged "lack of confidence" (Dkt. 8 at 104) against the collateral consequences of, and available alternatives to, a full-on denial, such as granting a reduced quota with additional recordkeeping requirements. DEA's opposition trivializes these issues. More to the point, DEA's opposition cites no statute, case, or argument supporting an exemption from its own recordkeeping requirement here.

Simply put, DEA defaulted. As to default, DEA's claim that the Federal Rules of Appellate Procedure "do not provide for a 'default judgment' disposition," *see* Dkt. 30 at 15, is a head fake. While the Rules don't address the subject one way or the other, this is not a first-of-its-kind issue: in the absence of a specific appellate rule, courts regularly look to the Federal Rules of Civil Procedure. *See, e.g.*,

4

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832–33 (1989) ("policies informing [Fed. R. Civ. P. 21] may apply equally to the courts of appeals"); *Matthews v. Freedman*, 882 F.2d 83, 86 (3d Cir. 1989) (citing same in applying Fed. R. Civ. P. 11); *see also* Fed. R. App. P. 47(b) ("A court of appeals may regulate practice in a particular case in any manner consistent with federal law, these rules, and local rules of the circuit."). DEA's opposition does not go so far as to deny the Court's authority to grant default. Nor does it offer authority for such a claim. Clearly, as the issuance of the Default Notice implies, the Court has it.

DEA's adjacent claim—that no prior appellate case awarded default—is correct but irrelevant. The absence of such authority speaks more to the fact that cases of original jurisdiction in Circuit courts are relatively rare and federal agencies generally comply with their statutory obligations to file the record under Rule 17(a). Two cases we cited in our opening brief cover this terrain—but never got to the central question of whether default is available under § 877 and similar statutory schemes because they found no prejudice from *a delayed filing of the record*. *Abdulai v. Att'y Gen. United States*, No. 20-2305, 2022 WL 3226617, at *4 (3d Cir. Aug. 10, 2022); *N.L.R.B. v. Int'l Bhd. of Elec. Workers*, 425 F.3d 1035, 1038–39 (7th Cir. 2005). Neither dealt with an agency's willful refusal to file one at all.

We covered this in our opening brief, citing the prejudice of DEA's delay to Ascent. Dkt. 29 at 13–14. DEA decided not to address the issue, waiving any claim

to the contrary.  A willful default causing prejudice compels judgment, a point we hope this Court embraces in its decision.

**B.    Pursuing § 877 review does not excuse DEA's recordkeeping obligation.**

Ascent's decision to seek § 877 review did not relieve DEA of its duty to keep a record supporting its decision.  This Court's Default Notice should have made that point clearly enough to the agency already.

No matter, Ascent was not required to seek administrative review before coming here.  The Controlled Substances Act "does not expressly mandate the exhaustion of administrative remedies," and therefore the Court has discretion to review DEA's final decision.  *Washington v. Barr*, 925 F.3d 109, 115 (2d Cir. 2019).  Critically, the applicable regulation renders an administrative hearing as permissive, not mandatory.  *See* 21 C.F.R. § 1303.34(a).  It provides a hearing to "[a]ny applicant or registrant who desires" one.  If a registrant chooses to forgo a hearing, "the Administrator may . . . issue his final order . . . without a hearing."[4]  21 C.F.R. § 1303.34(e).   Nor does 21 U.S.C. § 877 require a prior administrative hearing as a prerequisite to judicial review.  *See, e.g., John Doe,* 484 F.3d at 567 (Court of

---

[4] Again relying on implication, DEA suggests—but does not specifically say—that the September 29 denial was not final.  For the reasons described below, *see* pages 8-9 *supra*, the Court should ignore this implication.

Appeals has jurisdiction under 21 U.S.C. § 877 even where petitioner had declined to exhaust administrative remedies).[5]

Even if required, exhaustion is excused by futility or irreparable harm, *Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir. 1997), both of which apply here. Nor should Ascent be compelled to litigate in an administrative forum it has challenged as unconstitutional.[6] We address each point in turn.

### 1. Irreparable Harm

As the Court is aware, Ascent originally sought a temporary restraining order, providing compelling evidence of irreparable harm, which DEA did not refute or seriously contest.[7] *See* Dkt. 23. From that briefing, DEA was aware of Ascent's argument that irreparable harm excused any requirement to exhaust administrative remedies. *See* Dkt. 24 at 6-7. DEA's opposition ignored the point completely, a tactical decision that belies the absence of a credible answer. *See Able v. United States*, 88 F.3d 1280, 1288-89 (2d Cir. 1996) (exhaustion excused by irreparable

---

[5] As we previously noted, we sought DEA's position on finality before filing this action. DEA did not respond. Dkt. 24 at 3-4.

[6] *See Ascent Pharm., Inc. v. Garland*, No. 2023-cv-08260, Dkt. 1 (E.D.N.Y. Nov. 7, 2023).

[7] At oral argument on Ascent's Emergency Motion, the Honorable Denny Chin recognized that Ascent "has probably shown irreparable harm." *See Recording of Oral Arguments*, Nov. 14, 2023, at 1:29-1:55, https://ww3.ca2.uscourts.gov/decisions/isysquery/a713ef7d-5689-48e2-a325-0fff6d411d9e/91-100/list/.

harm); *see also Bracco Diagnostics, Inc. v. Shalala*, 963 F. Supp. 20, 31 (D.D.C. 1997) (same).

### 2.    Futility

Even if required, administrative review would be futile.   Exhaustion is excused where there is "no realistic possibility" that a hearing would alter the plaintiff's disposition.  *See Able*, 88 F.3d at 1289.  And, here, the chance of a different outcome is precisely zero.

DEA sat on a procurement-quota decision well into 2023, ignoring the then-applicable statutory deadline of July 1.  *See* 21 C.F.R. § 1303.12(c).[8]  It issued the denial only after Ascent filed suit to compel a decision.  *See Ascent Pharmaceuticals, Inc. v. U.S. Drug Enf't Admin.*, No. 2:23-cv-07211 (E.D.N.Y. Sep. 27, 2023).  Then it did so immediately—and without any record.  It did so in conjunction with a spurious and erroneous order to show cause seeking to revoke Ascent's registrations—*despite its 13-year history without any regulatory infractions whatsoever*—for supposed recordkeeping errors.  These circumstances give rise to a fair inference of retaliation, which also suggests futility.  *See Morall v. Drug Enf't Admin.*, 412 F.3d 165, 184 (D.C. Cir. 2005) (Henderson, J., concurring) (revocation

---

[8] In August 2023, DEA amended the regulation to push the deadline to December. *See* 21 C.F.R. § 1315.32.

immediately following complaint to DEA over its lengthy delay in issuing a decision suggests retaliation).

DEA's opposition further shows the degree into which its administrative heels are dug in. Obviously, DEA cannot say the quota-denial decision was premised on the OTSC or the underlying audits. If that were true, it would have simply shown that with an agency record. Nevertheless, DEA leans into the OTSC heavily to distract the Court because, allegedly, the audit found discrepancies of "millions of dosage units"—a claim DEA repeats three times for dramatic effect. *See, e.g.*, Dkt. 30 at 1, 6, 12. This is a tactical misdirection, and a cynical one at that.

If DEA actually found that Ascent misplaced so many pills, it would have shut Ascent down immediately, as it is permitted to do. *See* 21 U.S.C. § 824(d). DEA's audit found *paperwork discrepancies*, to be sure, but Ascent has provided exhaustive and complete evidence that any discrepancies were based on **draft, not final** forms, which was DEA's central mistake. *See* Dkt. 8 at 162-64. Ascent has shown evidence, supported by an expert affidavit, that its final forms—the only ones actually covered by DEA's recordkeeping regulations—**show zero discrepancies**. *See id.* DEA has had that evidence for more than six weeks. Its decision to neither address nor even acknowledge the evidence in its opposition—while continuing to make the "millions of dosage units" claim—is further evidence of the futility of its in-house review.

### 3.    Constitutional Bar to Administrative Review

If Ascent had taken the administrative-review option, it would have waived its constitutional challenge to DEA's ALJ process.  The challenge, now filed in district court, *see* footnote 6 *supra*, has merit:  the Supreme Court has declared similar administrative systems unconstitutional, in violation of Article II of the Constitution.  *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492-98 (2010) (PCAOB ALJ system violates Article II); *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2053-56 (2018) (appointment of SEC ALJ violates Article II's Appointments Clause); *see also Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 195-96 (2023) (permitting interlocutory constitutional challenges to structure of ALJ system).  The ALJ presiding over the OTSC in this matter issued a stay based on *Axon*.  Declining to excuse exhaustion here would put Ascent in a no-man's land, where it has no forum to have its case heard on the merits.

### C.    DEA offers no defense to its default.

Other than claiming—by implication—it was not required to keep a record, DEA's opposition does not actually explain or address default, including what relief is appropriate if the Court declines to excuse it.  DEA's opposition mentioned remand only twice, *see* Dkt. 30 at 11, 13, and neither addressed whether remand was appropriate *here*.  In other words, DEA waived the point completely.  In the absence

of any contrary argument or authority, the Court should grant Ascent's petition on the merits.

## II. The Court should reject DEA's motions for "clarification" and extension.

Whether it realizes, DEA's motion for clarification contains a central confession: "to avoid undue delay, DEA is working diligently to identify the materials that were considered in the process of issuing the initial quota denial letter to Ascent." Dkt. 30 at 10. As to what a record requires, this statement shows that neither DEA nor the experienced DOJ attorneys handling this matter need "clarification" of DEA's duty. As to timing, the promise to "avoid undue delay"— *by trying to do that now* (since the process seems not to have started)—is akin to closing the barn door after the horse bolted. The time for that has long passed. DEA offers no authority—not a single case—justifying its requested relief. Yet, every day that ticks by brings Ascent closer to its demise.

That reality—which DEA has conspicuously ignored at every step of this matter—should weigh heavily on the Court now, especially since DEA's papers reveal a shocking lack of candor. DEA obfuscates the duty to keep a record it knows it has. It slickly implies the recordkeeping errors were at the root of the quota-denial decision, but apparently has not even begun to "identify" (let alone gather) the information considered by the decision maker. It fails to acknowledge, explain, or

plead an excuse for its default. Knowing the Court expedited this appeal for good reason, DEA's litigation tactics have done nothing other than frustrate that purpose.

DEA's intransigence before this Court begs one to wonder why. Here, we return to the merits of § 877 review.

The fact that DEA has no record to support the quota denial is sufficient for the Court to grant Ascent's petition. But the denial is also arbitrary and capricious because it was an act of retaliation. *See* Dkt. 8 at 6-7. The Court knows this from the timing: despite sitting on the decision for months and months, DEA issued the denial two days after our EDNY petition and without any record. *See Morall*, 412 at 184 (Henderson, J., concurring) (DEA's "rush to judgment" after an "unexplained and lengthy delay" following counsel for petitioner submitting a complaint to Inspector General "appear[ed] . . . retaliatory"). But, more, the absence of a record should be particularly troubling to the Court—and indicative of a motivation *other than the merits*—given the serious issues Ascent raised at the TRO stage: (a) it has a spotless regulatory record, Dkt. 8 at 32, ¶ 13; (b) it was making more than 20% of generic ADHD medication at a time of a severe national shortage, *id.* at 107, ¶ 11; (c) any "discrepancies" in its records were only on draft documents, which it wasn't even required by DEA's regulations to keep, *id.* at 162-64; and (d) *it had zero actual discrepancies, id.*

We are not asking the Court to take our word for it. That is not the point. Rather—and this is critical—*a record would have addressed these issues, especially given the stakes for ADHD patients in desperate need of more medicine during a time of acute national shortage*. It is impossible to imagine an intellectually honest agency decision that failed to consider these issues. Without any record, the Court is left with nothing other than DEA's vague "lack of confidence," which it neither described, explained, weighted, contextualized, nor counterbalanced against the consequences of its quota denial or the ample possibilities of remediation.

Quota denials are rare. And those decisions are, obviously, hugely consequential to manufacturers and the supply chain. The slap-dash way DEA is treating the issue is hard to fathom considering all the serious consequences at play.

DEA's untidy reasoning is particularly unsettling when one considers the broader context of DEA's quota decisions, whether DEA is approving or denying them. DEA's motion for clarification invites the Court to craft a rule that quota decisions are exempt from § 877 review unless a registrant challenges the decision in an administrative proceeding first. This is outrageous. It would fundamentally undercut this Court's own precedent[9] and exempt DEA from carefully documenting its evaluation of quota applications, which are some of the most serious decisions

---

[9] *See* pages 6-7, *supra*.

13

the agency is called on to make. Poorly reasoned quota decisions contribute to both dangerous shortages and gluts in the supply chain. As to shortages, the Government Accountability Office has found—with respect to the very issue at play here, prescription drug shortages—that DEA "has not effectively administered the quota process" due to "lack of timeliness" and "weak internal controls."[10] As to gluts, the Inspector General has faulted DEA's quota administration as a contributing factor in the opioid crisis.[11] This is not a time to give DEA a pass on decisionmaking around drug quotas.

Why DEA asks for this relief here—on *this* record*, and without any briefing whatsoever on the serious issues at play when DEA makes quota decisions*—is a headscratcher. DEA asks for a vast decision from the thin air of its default, which is hardly a service to the Court or the public it serves. The Court need not fill in the blank around DEA's motive, illicit or otherwise, but nor should it put on judicial

---

[10] GAO Report to Congressional Requesters, *Drug Shortages: Better Management of the Quota Process for Controlled Substances Needed; Coordination between DEA and FDA Should be Improved*, 29 (Feb. 2015), https://www.gao.gov/assets/gao-15-202.pdf.

[11] Office of the Inspector General, *Review of the Drug Enforcement Administration's Regulatory and Enforcement Efforts to Control the Diversion of Opioids* (Oct 1, 2019), 13, https://oig.justice.gov/reports/2019/e1905.pdf (DEA approved opioid quota increases despite countervailing data).

14

blinders in the face of this record.  DEA's motions for clarification and extension are baseless and should be rejected.[12]

## CONCLUSION

For the foregoing reasons, the Court should grant Ascent's motion for default judgment and deny DEA's motions for clarification and extension.

Dated:  New York, NY
        January 3, 2024

Respectfully submitted,

**WALDEN MACHT & HARAN LLP**

By:     /s/      *Jim Walden*
     Jim Walden
     250 Vesey Street, 27th Floor
     New York, NY 10281
     Tel: (212) 335-2030
     jwalden@wmhlaw.com

     *Counsel for Petitioner Ascent*
     *Pharmaceuticals, Inc.*

---

[12] We oppose the extension request.  The Court expedited this appeal for good reason.  Counsel has been aware of the schedule for months.  There are two able lawyers on the brief.  The motion lacks a legitimate basis.

15

## **CERTIFICATE OF COMPLIANCE**

Jim Walden, an attorney of Walden Macht & Haran LLP, hereby certifies that this reply and response comply with the typeface and volume limitations of Rules 27 and 32 of the Federal Rules of Appellate Procedure because this filing contains 3,383 words, excluding the parts of the motion exempted by Fed. R. App. P. 27(d), and has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font, in accordance with Fed. R. App. P. 32(a)(5)-(6).

Dated:  New York, NY
         January 3, 2024

                             /s/           *Jim Walden*
                                     Jim Walden

## <u>CERTIFICATE OF SERVICE</u>

Jim Walden, an attorney at Walden Macht & Haran LLP, hereby certifies that on January 3, 2024, the foregoing reply and response was filed with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: New York, NY
         January 3, 2024

/s/         *Jim Walden*
            Jim Walden

17